IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-02413-WYD-KMT

CROSS CONTINENT DEVELOPMENT, LLC, a Colorado limited liability corporation

    Plaintiff,

v.

TOWN OF AKRON, Colorado, a Colorado municipal corporation;
THE AKRON TOWN COUNCIL;
CARL S. McGUIRE II, Esq., in his official capacity as Attorney for the Town of Akron;
THE BOARD OF TRUSTEES OF THE TOWN OF AKRON; and
THE COLORADO PLAINS REGIONAL AIRPORT DEVELOPMENT COMMITTEE,

    Defendants.

---

**ORDER**

---

THIS MATTER is before the Court on Defendants' Motion to Dismiss. Defendants move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff's claims asserted under federal law for unlawful taking, deprivation of procedural due process and deprivation of substantive due process. If these claims are dismissed, Defendants also ask the Court to decline to retain supplemental jurisdiction over the remaining state law claims and dismiss them without prejudice.

I.    <u>BACKGROUND</u>

This case arises out of a lease between the Town of Akron ["Akron"] and Cross Continent Development, LLC ["CCD"], a private entity. CCD alleges that on January 5, 2009, with no prior warning or notice, Akron terminated a 49-year old lease (the

"Lease") with CCD, under which CCD leased property adjacent to the Colorado Plains Regional Airport in Akron.

The Lease states that it may be terminated by a party only upon "written notice" of the existence of a breach and after providing the party alleged to be in breach with, at minimum, a one-year opportunity to cure. (Am. Compl., ¶ 19, Ex. A. p. 10.) CCD alleges that in reliance on the Lease, it sought, secured, and entered into agreements with investors and sublessees that would undertake construction and development of the airport facilities. (*Id.*, ¶¶ 17, 21-22.) Pursuant to these agreements, CCD was projected to earn more than $60 million during the Lease term. (*Id.*, ¶ 23.)

Under the Lease, Akron permitted CCD to lease the airport land for a period of 49 years, with five additional ten-year extension options. (Am. Compl., ¶ 15.) In turn, CCD was obligated to develop the leased land. (*Id.*, ¶ 16.) CCD's development responsibilities under the Lease included preparation of a plan for development of the leased land, to be completed no later than December 31, 2008. (*Id.*, ¶ 16.)

In November 2008, CCD alleges it fulfilled its obligation under the Lease by presenting to Akron a comprehensive development plan that incorporated Akron's previous suggestions and corrections. (Am. Compl., ¶ 20.) The development plan allegedly satisfied all required elements under the Lease. (*Id.*) Despite informing CCD that it would provide additional feedback after the November 2008 presentation, Akron failed to do so. (*Id.*) Instead, it terminated the Lease on January 5, 2009, without providing CCD written notice or a one-year opportunity to cure as required.

II. ANALYSIS

    A. Standard of Review

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id.* at 1950.

    B. Whether Dismissal is Appropriate as to the Federal Claims

        1. Unlawful Taking Claim

Defendants assert that the complaint fails to state a claim for an unlawful taking. They argue that a taking claim is only appropriate in connection with a government

-3-

contract if the plaintiff is foreclosed from bringing a state breach of contract claim. Here, Defendants assert that the rights between the parties were created by contract under the Lease, and that the contract rights are wholly intact. Accordingly, it is argued that Akron has not deprived Plaintiff of the full range of remedies under a breach of contract claim.

Turning to my analysis, it is well established that a plaintiff who is suing in connection with a government contract "is entitled to a takings remedy only if it is foreclosed from bringing a breach of contract action, *i.e.*, if its contract rights have been 'taken'." *PI Electronics Corp. v. United States*, 55 Fed. Cl. 279, 285 (Fed. Cl. 2003); *Hughes Communications v. United States*, 271 F.3d 1060, 1070 (Fed. Cl. 2002); *Castle v. United States*, 301 F.3d 1328, 1342 (Fed. Cir. 2002). In other words, "[a] takings claim has limited applicability when a claimant has a viable breach remedy." *PI Electronics*, 55 Fed. Cl. at 285. "This is so because '[v]irtually every contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of non-performance." *Id.*

As explained in *Hughes*, "[t]akings claims rarely rise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than its sovereign capacity. *Hughes*, 271 F.3d at 1070. "Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of property rights. *Id.* The court also noted that if the government's breach in that case of a launch services agreement with NASA was a taking under the Fifth Amendment, "then nearly all government contract breaches would give rise to

compensation under the Fifth Amendment. *Id.* It stated that the "court's predecessor has cautioned against commingling takings compensation and contract damages." *Id.* The court then held that the government was acting in its proprietary capacity when it entered the contract as it "'obtained certain rights and incurred certain responsibilities as did plaintiffs.'" *Id.* Accordingly, Hughes could only assert a breach of contract claim.

None of the above cases, however, dealt with leases involving real property. "As a general proposition, a leasehold interest is property, the taking of which entitles the leaseholder to just compensation for value thereof." *Sun Oil Co. v. United States*, 572 F.2d 786, 818 (Ct. Cl. 1978). "Further, authorized governmental actions can entail such an actual invasion of property rights that a constitutional taking can be implied." *Id.* Nonetheless, "the concept of a taking as a compensable claim theory has limited application . . . [even when a lease is involved] when those rights have been voluntarily . . . created by contract." *Id.* In such instances, as with other government contracts, interference with such contractual rights generally gives rise only to a breach of contract action. *Id.*; *see also Zoeller v. United States*, 65 Fed. Cl. 449, 460-62 (Fed. Cl. 2005).

In this case, CCD does not dispute that Akron was acting in its proprietary capacity when it entered the lease as it can be inferred from the allegations of the Amended Complaint that Akron "'obtained certain rights and incurred certain responsibilities as did [CCD].'" *Hughes*, 271 F.3d at 1070. Instead, CCD argues that it is precluded from the full range of remedies associated with any contractual property right it possesses in the lease. CCD asserts that because the Akron Town Council evicted CCD and treated the Lease as extinguished, rather than bringing an action for

alleged contract breaches, and then approved subleases to third parties on the property, CCD's ability to enforce its rights under the Lease (including the right to specific performance) is impaired. I reject this argument.

I find the *Zoeller* opinion instructive on that issue. There, as here, a lessee of government land brought suit against the government alleging that its termination of a lease effected a taking. *Zoeller*, 65 Fed. Cl. at 452. The court noted that plaintiff's claims arose out of the termination of the lease, and held that the lease between the plaintiff and the government "prescribed the contract rights of the parties upon termination." *Id.* at 462. The lease "contemplated and provided a method of resolving damages upon [its] termination", and "[b]y entering into the Lease, the plaintiff agreed to be compensated under the terms of the Lease." *Id*. *Zoeller* further noted that the government did not prevent the plaintiff from seeking contractual remedies for losses related to the termination, and that in fact the plaintiff did pursue a breach of contract case with the state. *Id*. Accordingly, the *Zoeller* court dismissed the taking claim.

Here, as in *Zoeller*, the parties entered into a contract that specified what would occur when a party breached the contract. Under the Lease, CCD has the right to seek damages for Defendants' breach, including the alleged failure to give notice and a right to cure before the Lease's termination. This right has not been impaired. Plaintiff has in fact brought a breach of contract action, and Defendants have done nothing to preclude CCD from asserting its contractual remedies.

As noted by one court, "[i]nstead of conferring a right protected from a taking, 'the contract promised either to regulate [the parties] consistent with the contract's terms, or

to pay damages for breach.'" *Klamath Irrigation Dist. v. United States*, 67 Fed. Cl. 504, 532 (Fed. Cl. 2005) (quotation omitted). "Under this approach, the availability of contract remedies is sufficient to vitiate a takings claim. . . ." *Id.*; *see also Die Casters Intern., Inc. v. United States*, 73 Fed. Cl. 174, 198 (Fed. Cl. 2006) (the plaintiff voluntarily entered into a lease with the Government as a commercial partner, and its rights "must be decided with reference to contract law"); *Janicki Logging Co. v. United States*, 36 Fed. Cl. 338, 346 (Fed. Cl. 1996) (denying takings remedy because plaintiff "remained unfettered in its ability to use the legal process defined in the contract" to remedy the claim against the government).

CCD also argues, however, that it is precluded from seeking specific performance since the lease is terminated and Akron has entered into subleases with other entities regarding the property. However, "the lack of a complete contract remedy . . . because the contract theory does not yield a recovery, does not give life to a takings theory." *Home Sav. of Atlanta, F.S.B. v. United States*, 51 Fed. Cl. 487, 495-96 (Fed. Cl. 2000). If the contract remedy does not produce a recovery, it is because the contract did not give a right to a recovery." *Id.* at 496. Here, the contract did not reference specific performance as a remedy, only damages.

Finally on this claim, CCD argues that a legislative body, the Akron Town Council, took away its contract rights through legislative action. "Fifth Amendment issues potentially can arise when the federal government, through legislative or administrative action, interferes with the property owner's use of its property. *Janicki Logging Co.*, 36 Fed. Cl. at 346. As stated by one court, when a defendant "'comes

down from the position of sovereignty and enters the domain of commerce, it submits itself to the same laws that govern individuals there.'" *Sun Oil*, 592 F.2d at 818 (quotation omitted).

In *Janicki Logging Co.*, the court found that the plaintiff did not state a taking claim because it did not allege "that the Forest Service ever engaged in legislative or administrative action that abrogated or repudiated any contract obligation or otherwise impaired plaintiff's ability to enforce the rights plaintiff secured under the contract." *Id.*, 36 Fed. Cl. at 346. "Hence, rather than acting as a sovereign and taking plaintiff's property for public use, the Forest Service acted in a proprietary capacity as a party to a contract and purported to exercise its rights for which it bargained under the contract." *Id.* "Plaintiff's property interest was not adversely affected because plaintiff remained unfettered in its ability to use the legal process defined in the contract. . . ." *Id.*

CCD argues that this case is distinguishable from *Janicki Logging Co.* That is because the Amended Complaint alleges that the Akron Town Council, a legislative body, approved the delivery of a letter to CCD terminating the Lease. By doing so, CCD argues that Akron abrogated or repudiated its contractual obligations of providing CCD with written notice and an opportunity to cure. I reject this argument. The Amended Complaint does not actually allege that Akron or its Town Council engaged in legislative or administrative action. While it does allege that the Akron Town Council is a legislative body of the Town of Akron (Am. Compl., ¶ 5), a government exercises its right as sovereign when it "acquire[s] property from the rightful owner for the public good.'" *J & E Salvage Co. v. United States*, 36 Fed. Cl. 192, 195 (Fed. Cl. 1996)

(quotation and internal quotation marks omitted); *see also Franconia Assocs. V. United States*, 61 Fed. Cl. 718, 738 (Fed. Cl. 2004) (noting that cases followed the lead of *Omnia Commercial Co., Inc. v. United States*, 261 U.S. 502, 510 (1923), "in which the Supreme Court held that if the government does not appropriate property for 'public use,' no taking, in the constitutional sense, occurs."). Here, as in *J & E Salvage*, CCD does "not allege or argue that [Akron] intended to take the [property] for the public good" or state facts that would allow the Court to infer that the termination letter was actually written in the Akron Town Council's sovereign capacity. *Id*.

Accordingly, I find that Defendants' Motion to Dismiss should be granted as to the unlawful taking claim.

### 2. Procedural Due Process Claim

Defendants assert that the Amended Complaint also fails to state a procedural due process violation because, like a taking claim, a plaintiff is entitled to a procedural due process remedy only if it is foreclosed from bringing a state breach of contract claim. Since the contract rights are intact, they argue that CCD has not stated a claim. Defendants also argue that the procedural due process claim should be dismissed because there has not been a deprivation of a constitutionally protected property right.

Turning to my analysis, a procedural due process claim requires a showing that the plaintiff possessed a constitutionally protected liberty or property interest such that due process protections were applicable and that the plaintiff was not "afforded an appropriate level of process." *Copelin-Brown v. N.M. State Pers. Office,* 399 F.3d 1248, 1254 (10th Cir.2005); *see also Kirkland v. St. Vrain Valley Sch. Dist. No. Re*-1J, 464

F.3d 1182, 1189 (10th Cir. 2006). The requirements of procedural due process apply only to the deprivation of those liberty and property interests encompassed by the Fourteenth Amendment. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Thus, in analyzing a procedural due process issue, it must first be determined whether the state has interfered with a protected liberty or property interest. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 459, 460 (1989).

Defendants are correct that courts have held "[a] claim of breach of contract by a state actor, without 'any indication or allegation that the state would refuse to remedy the plaintiffs' grievance should they demonstrate a breach of contract under state law,' does nos not state a claim for procedural due process. *Ramirez v. Arlequin*, 447 F.3d 19, 25 (1st Cir. 2005). In other words, a claim for breach of contract generally does not support a due process claim unless state contract remedies are foreclosed to the plaintiff. *Lujan v. G & G Fire Sprinklers,* Inc., 532 U.S. 189, 196-98 (2001); *see also R.E. Grills Constr. Co. v. Alabama Dep't of Transp.*, 198 F. Supp. 2d 1297, 1301 (N.D. Ala. 2002).

Under this line of cases, if the state provides a remedy through a breach of contract action in state court, there is no due process violation. *Lujan*, 532 U.S. at 195-96. As noted by the Sixth Circuit, "'it is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim.'" *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx. 826, 831 (6th Cir.), *cert. denied*, 130 S. Ct. 299 (2009) (quotation omitted). *Ramsey* explained that "[a] state breach of contract action is most clearly an adequate remedy for a property deprivation

-10-

when the only basis for federal jurisdiction is that a state actor is one of the contracting parties." *Id.*

However, *Ramsey* also acknowledged that a state breach of contract action may not provide an adequate remedy for a deprivation of some kinds of property. *Id.*, 844 F.2d at 1273. Due process may then require some kind of a predeprivation procedure. *Id.* In other words, "not all parties can be made whole through a breach of contract action." *Baird v. Bd. of Educ. for Warren Community Unit*, 389 F.3d 685, 691 (7th Cir. 2004). The issue turns on whether the plaintiff " was denied a right by virtue of which he was presently entitled either to exercise ownership dominion over real or personal property, or to pursue a gainful occupation." *Id.* (quoting *Lujan*, 532 U.S. at 196); *see also Perry v. Sindermann*, 408 U.S. 593, 601-03 (1972) (holding that "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke a hearing" and finding that a teacher's written contract with an explicit tenure provision may justify a legitimate claim of entitlement entitled to due process).

As stated by the Ninth Circuit, there is no due process claim where "the contract has not given rise to a greater interest than the contract itself, and so a wrongful termination of the contract may be fully remedied by a common law breach of contract action." *DeBoer v. Pennington*, 287 F.3d 748, 750 (9th Cir. 2002). The Seventh Circuit noted in trying to further define this issue that "[t]he postdeprivation remedies appropriate to the deprivation of an interest to which there is a present entitlement are

characterized by promptness and by the ability to restore the claimant to possession." *Baird*, 389 F.3d at 692. "The underlying concept seems to be that the remedy is available before the loss has become complete and irrevocable." *Id.*

I now turn to whether Plaintiff's interest in the lease is sufficient to rise to the level of protection available under the Due Process clause. As noted by the Tenth Circuit, "[p]roperty interests are not created by the Constitution, but rather by independent sources such as state law." *Kirkland*, 464 F.3d at 1189-90. "'Thus, constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials.'" *Id.* (quotation omitted).

Turning to the applicable state law, Colorado law has impliedly recognized that commercial leases of the type at issue in this case are protected property interests. *Cherry Creek Aviation, Inc. v. City of Steamboat*, 958 P.2d 515, 518 (Colo. Ct. App. 1998). That case is strikingly similar to the case at hand. The plaintiff there had an agreement that it would provide a "fixed base operation" at the Steamboat Springs Airport. *Id.* The lease was for three years, with an option to extend for thirty years. *Id.* One year into the lease the city terminated the lease, declaring it invalid. *Id.* The court first noted under Colorado law that not all contracts between a public entity and a private party give rise to a property right. *Id.* at 524. In so holding, the court implicitly found that some contracts do give rise to a property right. It then concluded as to a procedural due process claim that the plaintiff lacked a basis to assert a protected property right entitled to constitutional protection. *Id.* That was based solely on the fact

that the lease was invalid because it did not comply with the city charter requiring the lease to be adopted by ordinance. *Id.* at 519-20, 524. Thus, instead of holding that the lease in question did not constitute a protected property interest for purposes of due process, it implicitly recognized that it did constitute such an interest but denied the claim on a different basis, that the lease was invalid. *Id.* at 524; *see also Eason v. Bd. of County Comm'rs of County of Boulder,* 70 P.3d 600, 605-06 (Colo. Ct. App. 2003) (holding that "[u]nder Colorado law, the right to use property is fully protected by the Due Process Clauses of the federal and state constitutions" and finding "Colorado law recognizes a protected property interest in a prior zoning classification when a landowner takes substantial actions in reliance on same).

Based on the foregoing, I find that the underlying substantive interest in the contract was created by state law. I now must decide under "federal constitutional law . . . whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause" such that the right is a protected property right protected by due process. *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 9 (1978) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

I find for purposes of the motion to dismiss that Plaintiff has a protected property right in remaining in the lease for its full term and in being able to develop the property in accordance with the lease. CCD has a legitimate right of entitlement to the property under the lease, including the right to enter and build on the land, and the property interests affected by Akron's action are substantial. Many courts have recognized that leases, including commercial leases, involving use of a property give rise to a protected

property interest. *See Gentry v. City of Lee's Summit, Mo.*, 10 F.3d 1340, 1344 (8th Cir. 1993); *Jeffries v. Ga. Residential Fin. Auth.*, 678 F.2d 919, 925 (11th Cir. 1982); *Holt Cargo Sys. Inc. v. Del. River Port Auth.*, 20 F. Supp. 2d 803, 830 (E.D. Pa. 1998), *aff'd*, 165 F.3d 242 (3d Cir. 1999); *see also Neiderhiser v. Borough of Berwick*, 840 F.2d 213, 218 (3d Cir. 1988) (lessor who had been denied an exemption from a zoning ordinance stated a substantive due process claim); *Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 537 (M.D. Pa. 2007) ("According to the Supreme Court of the United States: "It cannot be disputed that tenants have a property interest in their apartments for the term of their lease.'") (quoting *Lindsey v. Normet*, 405 U.S. 56, 72 (1972)); *cf. Bryan v. City of Madison, Miss.*, 213 F.3d 267, 275-776 (5th Cir. 2000) (developer's purchase agreement to buy city-owned land in order to build apartments did not convey any protected property interest as it did not convey a right "to enter the land, to exclude others from the land, or to build anything on the land", only "a right to get the down payment back if the seller does not make good title").[1]

I also find that CCD established the second prong of a procedural due process element. It appears undisputed that Defendants did not provide CCD any type of

---

[1] The cases relied on by Defendants in its motion to dismiss are inapplicable as they did not involve leases or property rights thereunder. While Defendants cite *Zoeller* in its reply as establishing that a lease is not a protected property interest for purposes of procedural due process, the case does not stand for that principle. *Zoeller* did not address a due process claim, only a taking claim, and concluded as I did that a taking claim in connection with a termination by the government of a lease did not state a claim for relief. Finally, the case of *Mid-Atlantic Soaring Ass'n v. F.A.A.*, No. RDB 05-2110, 2006 WL 1892412 (D. Md. June 29, 2006) cited in Defendants' reply was not predicated on termination of a lease that the plaintiff had with the government, but on an addendum to the lease which meaning was disputed between the parties regarding the use of a turf runway. Thus, I find it is distinguishable. The court in that case also found no property right to the runway because "nothing in the addendum bestows rights over the turf runway" to the plaintiff. *Id.* at *6, 8.

hearing or notice before it deprived CCD of its property interest in the Lease, either through written notice and a right to cure as required under the Lease or through any other type of hearing. While I recognize that in certain circumstances a postdeprivation hearing will suffice, I find under the circumstances of this case such a hearing will not satisfy due process. In addressing what process is due, the Supreme Court applies a three-part balancing test involving three distinct factors: "'the private interest that will be affected by the official action;. . . the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.'" *Kirkland,* 464 F.3d at 1192 (quoting *Gilbert v. Homar*, 520 U.S. 924, 931-32 (1997)).

Here, I find that the private interest in the Lease and the rights thereunder to develop the land are substantial, particularly when I take into account that this is a 49-year lease with five additional ten-year extension options. CCD had substantial protections afforded by the lease, including the right to written notice in connection with a default, and a right to cure period of at least one year. Further, CCD alleges that it sought, secured and entered into agreements with investors and sublessees to develop the land which would afford it a projected $60 million over the balance of the Lease term, and that it prepared a comprehensive development plan as required by the Lease. Thus, it arguably took substantial action in reliance on the lease.

Turning to the second factor, I find that the risk of an erroneous deprivation was high. It does not appear from the Amended Complaint that Akron took any actions before terminating the lease to determine whether CCD was actually in breach of the

lease, nor did it provide CCD any opportunity to contest the grounds upon which CCD terminated the lease. Accordingly, there could have been an erroneous deprivation in connection with the termination of the lease. Finally, as to the government's interest, I acknowledge that "[t]here are times where a government entity 'must act quickly, or where it would be impracticable to provide predeprivation process.'" *Kirkland*, 464 F.3d at 1193. Here, however, Defendants have not identified any such circumstances. Based on the above, I find after a balancing of interests that a predeprivation hearing should have been afforded, and that a postdeprivation hearing would not suffice.

Based upon the foregoing, I find that CCD has stated a plausible procedural due process claim, and deny Defendants' Motion to Dismiss as to this claim.

### 3. Substantive Due Process Claim

CCD also alleges a Fourteenth Amendment substantive due process claim. Defendants again argue that CCD has not stated a protected property interest and also assert that a private corporation's rights arising from a contract with a government entity do not fall within the fundamental rights protected by substantive due process. Further, Defendants argue in their reply brief that there is no allegation that the Defendants' conduct shocks the conscience. Accordingly, Defendants request that this claim be dismissed with prejudice.

Turning to my analysis, in comparing procedural and substantive due process, the Tenth Circuit explained that "[p]rocedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an

arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). In order to state a substantive due process claim, "[Plaintiff] must first allege sufficient facts to show a property or liberty interest warranting due process protection." *Crider v. Bd. of County Comm'rs of County of Boulder*, 246 F.3d 1285, 1289 (10th Cir. 2001); *see also Hyde Park*, 226 F.3d at 1210.

Rights of substantive due process are generally not founded upon state provisions "but upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986); *see also DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 599 (3rd Cir. 1995), *abrogated on other grounds*, *United Artists Theatre Circuit, Inc. v. Township of Warrington, PA*, 316 F.3d 392 (3rd Cir. 2003). "[W]hat constitutes a property interest in the procedural due process context might not constitute one in that of substantive due process." *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989).

I find for purposes of the motion to dismiss that CCD has stated a protected property interest as to this claim. As with a procedural due process claim, several courts have recognized that commercial leaseholds constitute property rights worthy of substantive due process protection. *See DeBlasio*, 53 F.3d at 601 n. 10 (citing *Neiderhiser*, 840 F.2d at 218); *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 692-93 (3rd Cir. 1993), *abrogated on other grounds*, 316 F.3d 392 (3rd Cir. 2003)); *American Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 584 (D.N.J. 2003); *Holt Cargo Systems*, 20 F. Supp. 2d at 830. Other courts have taken this

principle one step further and held that a developer has a protected property interest under substantive due process in the approval of its development plans for property where, as here, the approving authority's discretion to reject the plans is limited. *See Woodwind Estates v. Gretkowski*, 205 F.3d 118, 123 (3rd Cir. 1123), *abrogated on other grounds*, 316 F.3d 392 (3rd Cir. 2003); *Hyde Park Co.*, 226 F.3d at 1210. Based on the foregoing, I find for purposes of the motion to dismiss that a property interest has been stated worthy of substantive due process protection.[2]

Second, I reject Defendants' argument that a private corporation's rights arising from a contract with the government entity are not entitled to substantive due process protection for their business and property. The Tenth Circuit has stated that a corporate defendant is entitled to the protections of the Due Process Clause. *United States v. Rockwell Intern. Corp.*, 124 F.3d 1194, 1201 (10th Cir. 1997) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996)); *see also First Nat. Bank of Boston v. Bellotti*, 435 US. 765, 779-80 (1978) (corporations are "persons" within meaning of Fourteenth Amendment). Further, the Tenth Circuit has analyzed substantive due process claims by corporations, implicitly recognizing that they have the right to assert such a claim. *See, e.g., Rocky Mountain Roques, Inc. v. Town of Alpine*, No. 08-8087, 2010 WL 1531156 (10th Cir. April 19, 2010); *Ramsey-Winch, Inc. v. Henry*, 555 F.3d 1199 (10h

---

[2] Defendants' reliance on *Adams Parking Garage, Inc. v City of Scranton*, 171 F. Supp. 2d 417 (M.D. Pa. 2001) is misplaced. In that case, the lease at issue allowed the city to terminate upon condemnation of the property. *Id*. at 424. The property was later condemned and the lease terminated. *Id*. The court found under those circumstances that the plaintiff no longer had a legitimate claim of entitlement to the property. *Id*. at 425-26. Here, however, accepting CCD's allegations as true, the Lease did not allow for termination in the manner done by Defendants, and CCD had a legitimate claim of entitlement to the property under the Lease. The case thus actually supports CCD's argument, not Defendants' argument.

Cir. 2009); *KT.&G Corp. v. Attorney General of State of Okla.*, 535 F.3d 1114 (10th Cir. 2008).

Finally, to the extent that Defendants argue that the Amended Complaint does not meet the second prong of a substantive due process claim, I disagree. To satisfy this element, CCD "'must allege facts sufficient to show that the challenged governmental action was 'arbitrary and capricious.'" *Crider*, 246 F.3d at 1289 (quotation omitted). In other words, CCD must show conduct "that shocks the judicial conscience", defined as "deliberate government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (quotation omitted).

On this issue CCD alleges that Akron's termination was "arbitrary, capricious, and made in bad faith." (Am. Compl., ¶ 25.) The Complaint also describes conduct exhibiting these traits, including (1) Defendant McGuire publicly acknowledging the one-year cure period in the lease, and then nevertheless stating that CCD's rejection of the termination notice on that basis would "set us up for the next violation"; (2) Akron's receiving of advice from one of CCD's former members, Randall Hayes, who had an economic incentive in seeing CCD's Lease terminated; and (3) Akron's usurping CCD's right under the Lease to approve subleases and receive monetary compensation therefrom. (*Id.*) Assuming these facts as true for purposes of the motion to dismiss and construing the facts in the light most favorable to CCD, I find that these facts could allow this Court to draw the reasonable inference that Defendants' acts were arbitrary, capricious and/or conscience shocking. This is a fact issue that is better left for

resolution at a later stage of this proceeding. *See Adams Parking Garage*, 171 F. Supp. 2d at 425 ("the economic motive of a state actor violates due process. . . where the state actor makes a pretextual use of its governmental power for proprietary gain" and that "[w]hether a city has acted with an improper motive is a factual question").

        3.    <u>CCD's State Law Claims</u>

Defendants' motion asked the Court to decline to exercise supplemental jurisdiction over the state claims if the federal claims were dismissed. Since I have not dismissed all the federal claims, this argument is denied as moot.

III.    <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** as to the unlawful taking claim (the Third Claim for Relief) and **DENIED** as to all other claims.

Dated: September 23, 2010

                              BY THE COURT:

                              <u>s/ Wiley Y. Daniel</u>
                              Wiley Y. Daniel
                              Chief United States District Judge